■ In the Matter of IRWIN LAHASKY, Petitioner, v BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Respondent.—In this CPLR article 78 proceeding transferred to this court for review, the determination of the Board of Higher Education of the City of New York, made after a hearing, finding petitioner, a nontenured assistant professor at La Guardia Community College, guilty of conduct unbecoming a member of the staff in that during two academic years he was engaged outside the university for more than one day during the week or its equivalent in violation of the university's regulations and did not disclose the nature of his outside employment, and imposing the penalty of removal from the instructional staff, modified, on the law, to vacate the penalty of dismissal and the matter remanded for imposition of a lesser penalty, and otherwise confirmed, without costs and without disbursements. The petitioner had received a favorable rating as an assistant professor during the period when it was alleged that he had the excessive outside employment. He was an assistant professor of data process-

ing, and also worked at a bank in that capacity as outside employment. The bank carried him on the basis of a weekly employee, although it appears that he was in compliance with the regulation that he average no more than "one day a week or its equivalent" in outside employment. There was no evidence that the petitioner neglected his classes or his students, and the determination of dismissal is clearly excessive under the circumstances. There should be an adjustment of the penalty. *(Matter of Feldstein v Appleby* 65 AD2d 720; *Matter of Santora v D'Elia,* 47 AD2d 634.) Concur— Kupferman, J. P., Birns and Markewich, JJ.

Silverman and Sandler, JJ., dissent in part in a memorandum by Silverman, J., as follows: I would confirm the determination of the board of higher education dismissing petitioner from his position as a member of the faculty of the La Guardia Community College, one of the constituent colleges of the City University of the City of New York. There is substantial evidence to support the finding of the faculty disciplinary committee that during three years of employment by the college as a full-time member of the faculty, petitioner was also employed in a full-time 35-hour position with Bankers Trust Company (though apparently he was not required to perform these services for Bankers Trust at any specified hours of the day). From this finding, it follows that petitioner had violated the multiple position regulation of the university which forbade outside employment for more than an average of one day a week or its equivalent; and that petitioner had made false statements on his three permission application forms in 1976 and 1977 requesting permission to engage in outside professional services in which he stated that he was doing outside work one day a week or its equivalent. Thus Specifications Nos. 1 and 2 of the charges against him were fully sustained. With respect to Specification No. 3, the committee's finding takes full cognizance of the mitigating circumstances with respect to failure to file other permission application forms. The question thus becomes one of the appropriateness of the discipline imposed. More specifically, the question for us is whether the punishment of dismissal is " ' "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness".' " *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 233.) I cannot say that it is so disproportionate. The preamble of the university multiple position regulation declares: "MULTIPLE POSITIONS 1. PREAMBLE: Each full-time faculty member is obligated to view his appointment to a college or university faculty position within the City University as his major professional commitment. This commitment obligates the faculty member in two ways: he is at once a member of the national and international world of learning and a member of the City University community. Though his first responsibility to the City University is that of teaching, he recognizes the obligation to be regularly accessible for conferences with his students, to participate in appropriate extracurricular undertakings and to serve on various college and university committees and as a member of college and university councils and other assemblies. He constantly makes all efforts to improve his professional standing through study and thought, and also through activities such as research, publication, attendance at professional conferences, and the giving of papers and lectures. Such professional involvements enhance his abilities as a teacher and as a member of the City University community; they are undertaken with a view toward supporting the value of his activities on campus and equipping him to participate in significant educational innovations as well as toward furthering his professional stature." Thus the university expressly requires something more than satisfactory classroom performance. It requires outside activities and efforts

in connection with the university and in connection with scholarly activities, study, thought, research, etc. Obviously these are reasonably related to a university's efforts to have a first-rate faculty. It is equally obvious that the regulation forbidding excessive outside employment is related to the same objectives. I cannot say that the university is arbitrary or capricious in treating these requirements very seriously and in dismissing a purportedly full-time member of the faculty who has so clearly violated its regulation and misrepresented the fact that he was violating it. The very human desire of petitioner to earn more money to support his family better is a consideration for the university authorities; it does not authorize a court to interfere in this measure of discipline recommended by a faculty disciplinary committee imposed of petitioner's colleagues, and approved by the university.